SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

DEC - 5 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

### for the
### Western District of Virginia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| 312 Palm Street Glade Spring, VA | ) ) ) |

Case No. 1:18mj)182

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location)*: 312 Palm Street, Glade Spring, VA (to include the residence, curtilage, outbuildings, stuctures, campers, vehicles registered to or operated by Candice Litton, and the person of Candice Litton). Attachment A consists of a photograph of the residence.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § 846/841(a)(1) , and the application is based on these facts: See Attachment C          and/or 841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/5/18

_____
*Judge's signature*

City and state: Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

# ATTACHMENT A



312 Palm Street, Glade Spring, VA

# ATTACHMENT B

1. Methamphetamine laboratory precursors and chemicals (and original packaging/containers of same and related store receipts) including pseudoephedrine, ether/petroleum naphtha/white gas (e.g. lighter fluid, Coleman Fuel), ammonium nitrate (e.g. instant cold packs), lithium (e.g. batteries containing lithium), sodium hydroxide (e.g. Red Devil Lye), muriatic acid, and sulfuric acid.

2. Unidentified powders (processed/semi-processed precursors, chemicals to be used in the manufacturing of methamphetamine).

3. Glass jars and plastic bottles/storage containers filled with unidentified liquids and sludges (processed/semi-processed precursors and other unidentified mixtures related to the manufacturing of methamphetamine)

4. Devices used to communicate with methamphetamine manufacturing co-conspirators including cellular telephones; electronic equipment used for counter-surveillance to include scanners and video surveillance cameras/systems.

5. Books, receipts, ledgers, notes, and videos pertaining to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors and chemicals.

6. Messages/letters, telephone numbers/call records/contact information, names, and addresses relating to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors and chemicals. These messages/letters, telephone numbers/call records/contact information, names, and addresses may be written on personal calendars, personal address/telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

8. Photographs and videos depicting persons involved with/engaged in the manufacturing/use of methamphetamine and/or the purchasing, preparing, transporting, and storing of methamphetamine laboratory precursors and chemicals.

9. Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles. Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs (including digital), keys, receipts, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

10. Many of the items listed in Paragraphs 5 through 9 are commonly stored in/on digital media. Therefore, digital media (including but not limited to computers/computer hard drives, floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular/smart telephones, digital cameras, DVRs, iPODs, iPADs, etc.) are to be seized and examined specifically for the items listed in Paragraphs 5 through 9.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 312 Palm Street, Glade Spring, VA. This affiant, after obtaining and reviewing information, believes there is evidence of conspiracy to manufacture methamphetamine at 312 Palm Street, Glade Spring, VA in violation of 21 USC 846/841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (27) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I am a graduate of both the DEA's Clandestine Laboratory Investigation/Safety Certification Program and the DEA's Clandestine Laboratory Site Safety Officer School. I have participated in the execution of more than (300) narcotics related search warrants and the seizure and dismantling of more than (200) clandestine methamphetamine laboratories. I have testified as an expert on multiple occasions in Federal Court and State Court regarding the clandestine manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my personal participation in the investigation of Candice Litton (aka Candice Roop) and information provided to me by other law enforcement officers and other individuals hereafter referred to as "Person A" and "Person C". Any reference to the gender of any unnamed person within this affidavit does not necessarily reflect the true gender of said person.

5. The manufacturing of methamphetamine (a Schedule II Controlled Substance) by way of the ammonium nitrate/lithium metal method (also known as the "shake and bake" or "one pot" method) requires pseudoephedrine/ephedrine (obtained through the processing of cold/allergy pills, tablets, gelcaps, and liquids containing pseudoephedrine or ephedrine), ammonium nitrate (found in instant cold packs), and lithium metal (found in lithium batteries). Other chemicals/ingredients commonly used during the ammonium nitrate/lithium metal method include sodium hydroxide (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel, lighter fluid), acetone, muriatic acid, sulfuric acid, table salt, and aluminum foil. Equipment/tools commonly used during the manufacturing of methamphetamine include soda bottles, glass mason jars, plastic food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters

(often used to open lithium batteries), Ziplock-type plastic bags, frying pans/electric skillets/propane burners (to dry the methamphetamine), razor blades, digital scales, funnels, and stirring utensils.

6. Individuals who manufacture methamphetamine usually use and sell/trade the methamphetamine they manufacture. These manufacturers routinely have other persons (hereafter referred to as "shoppers") assist them in the purchasing of precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine. Shoppers often perform some degree of initial preparation of methamphetamine manufacturing related ingredients such as removing ingredients from their original packaging or combining certain ingredients. Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

7. Individuals who are involved with the manufacturing of methamphetamine often purchase/attempt to purchase unusually large quantities of pseudoephedrine. Such purchases/attempted purchases often occur when the individual should have a day to multi-day supply of pseudoephedrine left over from the most recent purchase if said individual was taking the maximum dosage pursuant to dosage instructions.

8. On October 30, 2018, this affiant and other officers seized and processed an ammonium nitrate/lithium metal method methamphetamine lab at a residence in Glade Spring, VA. Multiple reaction vessels (cook bottles) were recovered from the premises. Person A was encountered at the scene and made numerous statements against her own penal interest regarding the manufacturing methamphetamine and admitted to being a methamphetamine manufacturer. Person A claimed that Candice Roop (aka Candice Litton) was an individual involved with obtaining ingredients (one of the shoppers for the lab – reference ¶6 above) for the manufacturing of methamphetamine at the residence and had purchased pseudoephedrine for two (2) of four (4) recent "cooks" that occurred at the residence during the last few days of October 2018. Person A admitted purchasing pseudoephedrine for one of the "cooks" and claimed that another manufacturer (hereafter referred to as "Person B") came to the residence and brought his own pseudoephedrine for another "cook".

This affiant subsequently reviewed pseudoephedrine sales data provided by a number of retailers (as required under The Combat Methamphetamine Epidemic Act of 2005) and discovered that Candice Litton purchased (10) day supplies of pseudoephedrine in Abingdon, VA on 10-26-2018 and 10-27-2018. This affiant has reviewed the related retail store security videos (and obtained still images from same) of Candice Litton purchasing (10) day supplies of pseudoephedrine from WalMart (Abingdon, VA) on 10-26-2018 and Walgreens (Abingdon, VA) on 10-27-2018. This affiant noted that the pseudoephedrine sales data also showed that Person A and two residents of the home (from which the methamphetamine lab was seized on 10-30-2018) purchased pseudoephedrine from the WalMart in Abingdon, VA during October 2018 but only Person A, Person B, and Candice Litton performed purchases of pseudoephedrine during the last few days of October 2018 (Person B's purchase occurred at Walgreens in Abingdon, VA).

9. On November 9, 2018, this affiant and other law enforcement officers interviewed Person C. Person C admitted (against his own penal interest) being a

methamphetamine trafficker. Person C claimed that Candice Litton is also a
methamphetamine trafficker.

Law enforcement performed multiple controlled purchases (utilizing a confidential
source or sources) of methamphetamine from Person C during 2018.

10  This affiant is aware based on his training, experience, and conversations with
other law enforcement officers that individuals who conspire to manufacture
methamphetamine typically maintain methamphetamine manufacturing
precursors and chemicals (as described in paragraph #5 above) along with receipts /
notes / messages / records / telephone numbers (as they pertain to conspiracy to
manufacture), and other items as listed and explained on Attachment B (of the
Application and Affidavit for Search Warrant to which this affidavit is attached) on
their persons, inside their residences, garages, outbuildings/barns, campers, and
vehicles.

11. Candice Litton's known residence is 312 Palm Street, Glade Spring, VA.

12. Based upon the facts set forth above, I believe that there is probable cause for the
issuance of a search warrant for the premises known as 312 Palm Street, Glade
Spring, VA (located within the Western District of Virginia) as there is probable
cause to believe that there is evidence of a violation of 21 USC 846/841(a)(1) at said
premises.

_____          12-5-2018
Brian Snedeker, Special Agent (DEA)        Date
            Affiant

Subscribed and sworn to before me, this the ___5th___ day of __December, 2018__
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia


Seen by:

_____          12/4/2018
Jennifer R. Bockhorst, AUSA                Date

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 111 2nd St, Bristol, VA. This affiant, after obtaining and reviewing information, believes there is evidence of distribution of methamphetamine and/or conspiracy to distribute methamphetamine at 111 2nd Street, Bristol, VA in violation of 21 USC 841(a)(1) and 846/841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (27) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II Controlled Substance). I have also executed hundreds of search warrants related to the trafficking and manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of information provided to me by other law enforcement officers.

5. During the last (30) days, law enforcement utilized a reliable confidential source (or sources) to perform multiple controlled purchases (monitored, surveilled, and recorded by law enforcement) of multi-gram quantities of methamphetamine from Earl McCoy at 111 2nd St, Bristol, VA.

6. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who distribute and/or conspire to distribute methamphetamine typically maintain methamphetamine distribution paraphernalia (small, plastic, Ziploc-type baggies, digital scales, etc.), notes, records, messages, and telephone numbers (pertaining to methamphetamine trafficking related contacts/co-conspirators/customers), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences, garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at or in the immediate vicinity of the trafficker's/conspirator's residence/property.

7. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that persons who distribute and/or conspire to distribute methamphetamine routinely have individuals who are customers and/or co-conspirators present at their residences, garages, outbuildings/barns, and campers. These customers/co-conspirators are typically drug users and drug traffickers themselves as they generally sell some (if not all) of the methamphetamine they purchase in order to make a profit, pay for their own drug habits, or both. These customers/co-conspirators often illegally possess methamphetamine and drug use/distribution paraphernalia along with notes, records, messages, and telephone numbers (pertaining to the acquisition/distribution of methamphetamine), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at or in the immediate vicinity of their sources'/co-conspirators' residences.

8. Earl McCoy's known residence is 111 2nd Street, Bristol, VA (located within the Western District of Virginia).

9. Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the premises known as 111 2nd Street, Bristol, VA as there is probable cause to believe that there is evidence of a violation of 21 USC 841(a)(1) and 846/841(a)(1) at said premises.

_____        12-5-2018
Brian Snedeker, Special Agent (DEA)         Date

Subscribed and sworn to before me, this the ___5th___ day of December 2018
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Seen by:

_____        12/4/2018
Jennifer R. Bockhorst, AUSA             Date